# STATE v. JOSEPH U. BARNES.[1]

June 25, 1909.

Nos. 15,854—(17).

**Embezzlement by Trust Officer—Proof of Intent.**

Upon trial of an officer of a trust company, charged under section 5078, subd. 2, R. L. 1905, with larceny in misappropriating its funds, guilty intent cannot be inferred from the mere fact of possession thereof by the officer; but the state is required to prove, beyond a reasonable doubt, that the funds were taken with intent to appropriate the same.

**Same—Proof from Indebtedness.**

Upon the trial of an officer of a trust company, charged under section 3045, R. L. 1905, with appropriating the company's funds to his own use by becoming indebted to it, a guilty intent may be inferred from the mere fact of the indebtedness.

**Same—Charge to Jury.**

*Held,* upon the trial of appellant charged with larceny under section 5078, subd. 2, R. L. 1905, it was error to charge the jury that in determining the question of intent they might consider section 3045, and that under the provisions of that section guilty intent might be inferred, if appellant knowingly became indebted to the company.

Defendant was convicted in the district court for Hennepin county of the crime of grand larceny in the first degree and sentenced to confinement in the state prison for two years. From this judgment and from an order, Holt, J., denying a motion for a new trial, defendant appealed. Reversed.

*Lind, Ueland & Jerome* and *A. M. Harrison,* for appellant.

*George T. Simpson,* Attorney General, *Al. J. Smith,* County Attorney, *John F. Dahl,* Assistant County Attorney, and *John N. Berg,* for the State.

LEWIS, J.

Appellant was convicted of grand larceny in the first degree on

[1]Reported in 122 N. W. 4.

an indictment which charged that as president of the Minnesota Title Insurance & Trust Company he had in his possession and control $10,000 belonging to that company, and that he unlawfully, wrongfully, and feloniously appropriated the money to his own use. The company above referred to was a corporation first organized in September, 1885, under the provisions of chapter 107, p. 133, Laws 1883, as amended by chapter 3, p. 14, Laws 1885, under the name of the Minnesota Title Insurance & Abstract Company. In April, 1886, the articles of incorporation were amended, and the name was changed to the Minnesota Title Insurance & Trust Company.

It was conceded at the trial that appellant obtained possession of the $10,000, but he claimed to have borrowed the money in good faith upon ample security. Upon the question of "intent" the court instructed the jury as follows:

"The law says a person is presumed to intend to do that which he actually does do, and hence a jury may infer intent from the acts and conduct of the person. If one knowingly does an act forbidden or made a crime by law, a criminal or felonious intent may be inferred, or, in other words, where the act itself is unlawful, the fraudulent intent may be inferred from the intentional commission of the act itself. The law in relation to institutions of the character of the Minnesota Title Insurance & Trust Company, to which I have referred, provides (reading from section 3045, R. L. 1905) that it shall not lend its funds, moneys, capital, trust funds, or any other property whatsoever, to any director, officer, agent, or employee, nor shall any such director, officer, agent, or employee, become in any manner indebted to it by means of any overdraft, promissory note, account, indorsement, guaranty, or any other contract; and any such director, officer, agent, or employee, who shall become so indebted to it, shall be guilty of larceny of the amount of such indebtedness from the time of its creation. Therefore, if you find that the defendant did appropriate to his own use some of the moneys included in the three items I have referred to as constituting the charge against him, and that in appropriating the same he did an

act in violation of the statute above referred to, the jury may from proof of such violation knowingly committed infer an unlawful and felonious intent."

The jury, having retired, came into court and requested information regarding the law as to an officer of a bank using or appropriating its money to his own use, and the court charged:

"Now, that statute is in force as to trust companies organized under the law under which this corporation was organized; but you will understand that this prosecution is not under that statute, and I instructed you that only for the purpose of ascertaining whether there was any intent to deprive or defraud the corporation of its money in violation of this statute you should consider the statute. That is, if the defendant in getting this money—obtaining this money which he was accused of embezzling—did any act forbidden by this law, then you may infer from doing that forbidden act, if he did it knowingly, that he intended to appropriate the funds of the company to his own use. It is bearing on the intent only that you may consider that statute in connection with the other evidence."

Appellant was indicted under subdivision 2, § 5078, R. L. 1905, and not under section 3045. The trial court so understood the case, and in one part of the charge correctly instructed the jury that the state assumed the burden of proving beyond a reasonable doubt that appellant appropriated the money to his own use with felonious intent. But the statement that section 3045 might be taken into consideration was error. Under that section the law infers the felonious intent to appropriate the funds of the company from the fact that an officer becomes indebted to it, and no specific intent need be shown; whereas under section 5078 the state is compelled to prove beyond a reasonable doubt that the money was appropriated with the intention to deprive the company of it. Upon a trial under section 3045, the state having shown an indebtedness, a prima facie case of guilt is made out; but under section 5078 indebtedness may be consistent with innocence. The state having elected to indict appellant under the general larceny statute, it became imma-

terial that the corporation was organized as a trust company and was doing in part a trust business.

We deem it unnecessary to consider the other assignments.
Reversed.